IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHELLE MOORE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 06-0412-WS-B |
| | ) |
| ALLSTATE INDEMNITY COMPANY, et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter is before the Court on the plaintiff's motion to remand. (Doc. 7). The parties have filed a brief in support of their respective positions, (Docs. 7, 9, 10), and the motion is ripe for partial resolution.

**BACKGROUND**

In April 2005, the plaintiff purchased a renter's insurance policy from the corporate defendants (collectively, "Allstate") after dealing with Allstate's agent, individual defendant Tiffney McCulley. The complaint alleges that McCulley made false representations concerning the scope of the policy's coverage. Later in April 2005, the plaintiff made a claim on the policy, asserting that her home had been broken into and that items totaling $5,329.90 had been stolen and items totaling $8,129.91 had been vandalized. Allstate denied the claim in June 2005, on the basis of material misrepresentations made in the course of the investigation and questions as to whether a loss had occurred as described under the policy. The complaint identifies the plaintiff's damages as: (1) loss of use and benefit of her insurance premiums; (2) loss of the benefits of the policy; (3) mental anguish; and (4) punitive damages, and it prays for an award "in an amount of compensatory and/or punitive damages as a jury may assess." (Complaint at 4, 6).

The plaintiff filed suit in the Circuit Court of Hale County on or about April 27, 2006. The defendants were served on May 2 and 4, 2006. On June 1, 2006, Allstate served the plaintiff with a request for admission that she would "never seek or attempt to recover" more than

$75,000 from Allstate. On June 16, 2006, the plaintiff responded that she "objects to this Request for Admission on the basis of *Burns v. Windsor* [sic], 31 F.3d 1092 (11th Cir. 1994)." (Doc. 7, Exhibit I). Removal was accomplished on July 14, 2006.

## DISCUSSION

The defendants assert that the Court has subject matter jurisdiction based on diversity of citizenship. The plaintiff responds that: (1) complete diversity is lacking because McCulley and the plaintiff are both Alabama citizens; (2) the defendants have not carried their burden of showing that the amount in controversy exceeds $75,000; and (3) the defendants did not timely remove the action.

**I. Fraudulent Joinder.**

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983). Conversely, if no such possibility exists, the joinder is fraudulent as a matter of law. *Id*. at 1440.[1] There must be "no *reasonable* possibility" of legal liability; a mere *theoretical* possibility will not prevent a conclusion of fraudulent joinder. *Legg v. Wyeth*, 428 F.3d 1317, 1325 & n.5 (11th Cir. 2005)(emphasis added). The burden is on the defendants to make the required showing by clear and convincing evidence. *Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The plaintiff concedes that her only potentially viable claims against McCulley sound in fraud. (Doc. 7 at 14-15). The complaint identifies McCulley's misrepresentations as: (1) that the policy "would protect her in the event her home was burglarized and/or vandalized"; (2) that

---

[1] *Accord Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997)(the issue is "whether the facts alleged in Plaintiffs' complaint state even an arguable cause of action under Georgia law")(emphasis omitted).

the policy "would cover personal items in the home if they were stolen and/or damaged by theft and/or vandalism"; and (3) that the policy "was a full coverage policy." (Complaint, ¶ 5; Doc. 7 at 15). The plaintiff insists that the mere fact Allstate did not pay her claim supports the inference that the policy did not provide coverage for theft or vandalism, rendering false McCulley's representations to the contrary. (*Id*. at 16).

Allstate, however, has submitted two affidavits explicitly confirming that the policy in fact provided coverage for vandalism and theft. (Barkley Affidavit, ¶ 5; McCulley Affidavit, ¶ 5). Allstate has also submitted the policy itself, which expressly provides coverage for vandalism and theft. (Doc. 1, Exhibit D at 6, ¶ 8; *id*. at 7, ¶ 15).

Nor does Allstate's denial letter in any way indicate that the denial was based on the policy's failure to provide coverage for theft and vandalism. On the contrary, the letter identifies the reasons for the denial as that: (1) "[t]he investigation indicates that misrepresentations regarding materials [sic] facts or circumstances relating to the reported loss were made to Allstate during the course of its investigation;" and (2) "[t]here is a question as to whether or not a loss occurred as described under the policy of insurance." (Barkley Affidavit, Attachment). That is, the reasons for denial were post-loss misrepresentations and skepticism that the plaintiff had in fact been burglarized or vandalized.

The plaintiff protests that an incident/offense report reflects that a burglary and theft of property took place. (Doc. 7 at 16; *id*., Exhibit J). While this may bear on whether theft and vandalism in fact occurred, it says absolutely nothing about whether the policy covers theft and vandalism. As discussed above, the only evidence in the case is that the policy does cover such losses.

While the Court must resolve all questions of fact in favor of the plaintiff, *Legg v. Wyeth*, 428 F.3d at 1323, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id*. Because there is uncontroverted evidence that the policy covers losses from theft and vandalism, for purposes of determining fraudulent joinder the Court must accept that uncontroverted evidence. *Id*.

As the policy covers losses from theft and vandalism, there is no reasonable possibility (or even theoretical possibility) that an Alabama court would conclude that McCulley's representations that the policy provided such coverage were false. And, as the plaintiff

concedes, absent a false representation, there is no possibility that McCulley could have committed fraud.  The Court thus easily concludes that McCulley was fraudulently joined.  Accordingly, her citizenship may be ignored for purposes of assessing the existence of complete diversity.  *Henderson v. Washington National*, 454 F.3d at 1281.

## II.  Timeliness of Removal.

Removal must be accomplished within 30 days of service of the initial pleading or, "[i]f the case stated by the initial pleading is not removable, ... within thirty days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b).  Removal was not accomplished within 30 days after service of process but was accomplished within 30 days of receipt of the plaintiff's response to a request for admission.  The plaintiff argues that, if the case was removable at all (which she denies), it was removable from the outset, such that the defendants were required to remove within 30 days after service of process.

The explicit premise of the plaintiff's argument is that her response added nothing to the defendants' understanding of the amount in controversy, such that they "had the same information available to them" after receiving her response as before.  (Doc. 10 at 2).  On the contrary, the plaintiff's response suggested that she values her case above $75,000.  Although she did not in so many words admit that her claim is worth more than $75,000 (or deny that it is worth less), the plaintiff interposed an unexplained and (as far as the Court can make out in the absence of such explanation) baseless objection, citing a case that neither addresses the propriety of requests for admission to flesh out the amount in controversy nor shields a plaintiff from the responsibility of responding.  One (though not the only) reasonable inference from the plaintiff's tactic is that she considers the amount in controversy to exceed the jurisdictional amount but desires to keep that assessment private.  While "a refusal to stipulate [that her claims do not exceed $75,000] *standing alone* does not satisfy [the defendants'] burden of proof on the jurisdictional issue," *Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001)(emphasis added), "it is nonetheless some evidence of the value of the case."  *Alexander v. Captain D's,*

*LLC*, 437 F. Supp. 2d 1320 (M.D. Ala. 2006).[2]

Nor was the complaint transparently removable independent of the plaintiff's discovery response.  As noted, the plaintiff's "hard" damages are below $13,500, less than 18% of the jurisdictional amount.  It is true, as the plaintiff notes, that the defendants "could have argued" that, assuming an award of mental anguish and/or punitive damages five times the amount of hard damages, the amount in controversy exceeded $75,000.  (Doc. 7 at 11-12).  The trouble is that the complaint provides little basis for concluding that the plaintiff likely would be awarded such an impressive multiplier.  For example, it does not allege that the plaintiff experienced any physical symptoms of mental anguish or sought any medical treatment for it.  Nor does it allege that the defendants' conduct was part of a pattern or practice of similar fraudulent conduct or otherwise indicate that a significant award of punitive damages is likely.

The defendants were not required to remove based solely on the complaint unless they "could have intelligently ascertained that the action was removable" before receiving the plaintiff's discovery response.  *Mendez v. Central Garden & Pet Co.*, 307 F. Supp. 2d 1215, 1217 (M.D. Ala. 2003); *accord Clingan v. Celtic Life Insurance Co.,* 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003); *Golden Apple Management Co. v. GEAC Computers*, 990 F. Supp. 1364, 1366 (M.D. Ala. 1998); *Naef v. Masonite Corp.*, 923 F. Supp. 1504, 1511 (S.D. Ala. 1996).  As discussed above, the removability of the complaint could not have been intelligently ascertained

---

[2]The plaintiff's strident insistence that her refusal to stipulate is immaterial rests on three cases, in each of which the Court employed the "legal certainty" test applicable to a complaint demanding a specific sum of damages below $75,000.  *See Burns v. Windsor Insurance Co.*, 31 F.3d 1092 (11th Cir. 1994); *Lindsay v. American General Life & Accident Insurance Co.*, 133 F. Supp. 2d 1271 (M.D. Ala. 2001); *Scott v. American General Life & Accident Insurance*, Civil Action No. CV-00-N-3603-W (N.D. Ala. 2001). In such cases, the defendant is required to prove to a legal certainty that, despite an express demand in the complaint for no more than $75,000, the amount in controversy nevertheless exceeds the jurisdictional amount.  Under such an exacting standard, a refusal to stipulate may well be of limited or no significance.  But when, as here (and *Williams* and *Alexander*), the amount demanded is indeterminate, and the defendant's burden of proof consequently only that of preponderance of the evidence, a refusal to stipulate is of more substantial import.

Indeed, the plaintiff correctly concedes that, had she denied the request for admission, the defendants "would have been timely in their removal."  (Doc. 7 at 13).  Her disingenuous discovery response, while technically not a denial, served much the same function.

prior to receipt of that response.

In short, the defendants were not required to remove within 30 days of service of process, and the plaintiff's discovery response provided the defendants an appropriate basis for removing within 30 days after its receipt. The notice of removal is not untimely.

### III. Amount in Controversy.

"[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Because the plaintiff has made an unspecified demand for damages, the *Tapscott* standard applies here. Under *Tapscott,* a defendant must show that, if the plaintiff prevails on liability, she will more likely than not be awarded over $75,000.[3]

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. Best Buy*, 269 F.3d at 1319. As should be clear from the discussion in Part II, neither the complaint on its own nor

---

[3] *E.g., Hitch v. Laws*, 2000 WL 1005888 at *2 (S.D. Ala. 2000)("Defendants can discharge the burden 'by presenting sufficient evidence that a verdict rendered in favor of [plaintiffs] would exceed $75,000.'")(quoting *Holman v. Montage Group*, 79 F. Supp. 2d 1328, 1330 (S.D. Ala. 1999); *accord Lowe's OK'd Used Cars, Inc. v. Acceptance Insurance Co.*, 995 F. Supp. 1388, 1393 (M.D. Ala. 1998)("In a diversity action where the plaintiff has not made a specific request for damages, the ultimate question the court addresses is whether a defendant has established by a preponderance of the evidence that should the plaintiff prevail on a particular claim, the plaintiff, more likely than not, will recover in excess of the federal jurisdictional prerequisite."); *Moton v. Bayer Corp.*, 2005 WL 1653751 at *2 n.6 (S.D. Ala. 2005).

the complaint combined with the plaintiff's discovery response carries the defendants' burden.[4]

Thus, pursuant to *Williams*, additional evidence is required in order to determine whether federal jurisdiction exists over this case.  To provide the defendants an opportunity to explore the plaintiff's vague damages allegations, and to eliminate the incentive of plaintiffs to disguise their damages so as to avoid removal, the Court concludes that the defendants are entitled to information concerning the plaintiff's claimed damages before the jurisdictional issue is resolved.  Accordingly, the plaintiff is **ordered** to file and serve, on or before **October 6, 2006**, the following (to be signed pursuant to Federal Rule of Civil Procedure 11): (1) a listing of each category of damages claimed by the plaintiff in this lawsuit, broken down separately for each defendant; and (2) the initial disclosures concerning damage computations required by Federal Rule of Civil Procedure 26(a)(1)(C), including any evidentiary material required by that rule.

The defendants are **ordered** to file and serve, on or before **October 20, 2006**, any supplemental memorandum and/or evidentiary materials supporting their position that the amount in controversy exceeds $75,000, exclusive of interest and costs.  If the defendants believe that additional discovery should be allowed before the jurisdictional issue is resolved, they shall identify the nature and contents of such discovery and propose a timetable for its completion.  The plaintiff is **ordered** to file and serve any response on or before **October 30, 2006**.  Unless additional briefing or discovery is ordered, the Court will take the issue of its subject matter jurisdiction under submission on **October 31, 2006**.

DONE and ORDERED this 22nd day of September, 2006.

s/ WILLIAM H. STEELE<br>UNITED STATES DISTRICT JUDGE

---

[4] The defendant notes that other bad faith cases in Alabama have resulted in verdicts exceeding $75,000.  (Doc. 1 at 5).  True enough, but "mere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature" of a defendant's assertion that the amount in controversy in a particular case exceeds $75,000.  *Federated Mutual Insurance Co. v. McKinnon Motors LLC,* 329 F.3d 805, 809 (11th Cir. 2003)(an Alabama bad faith case).